1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                        FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11                                                    No. C-05-456 MMC
   In re SILICON IMAGE, INC. SECURITIES
12 LITIGATION                                         **ORDER GRANTING DEFENDANTS'
                                                      MOTION TO DISMISS; DISMISSING
13                                                    THIRD CONSOLIDATED AMENDED
                                                      COMPLAINT WITH LEAVE TO AMEND;
14 _____/          VACATING HEARING**

15

16         Before the Court is the motion, filed September 1, 2006 by defendants Silicon

17 Image, Inc. ("Silicon Image"), Steve Tirado ("Tirado"), and David Lee ("Lee"), to dismiss

18 plaintiffs' Third Consolidated Amended Complaint ("TCAC"), pursuant to Rules 12(b)(6) and

19 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs William S. Hayman, John Herlihy,

20 and James Donald Smallwood have filed opposition, to which defendants have replied.

21 Plaintiffs, with leave of Court, have filed a surreply.  Having considered the papers filed in

22 support of and in opposition to the motion, the Court VACATES the hearing scheduled for

23 February 9, 2007, and rules as follows.

24                                        **BACKGROUND**

25         In the TCAC, plaintiffs allege that "Silicon Image manufactures and sells multi-

26 gigabit semiconductor solutions for the secure transmission, storage and display of rich

27 digital media" and "designs, develops and markets semiconductor solutions for

28 communications applications," (see TCAC ¶ 34); that Tirado has served as a Director of

United States District Court

For the Northern District of California

Silicon Image, as well as its President and Chief Executive Officer ("CEO"), since January 24, 2005, (see TCAC ¶ 21)[1]; and that Lee, a "co-founder" of Silicon Image and former CEO and former Chairman of the Board, is currently a "paid consultant" to Silicon Image, (see TCAC ¶ 22).

Plaintiffs allege that between February 17, 2004 and May 10, 2004, "Silicon Image gradually disclosed to the market in its public filings that it identified material weaknesses in its internal control environment." (See TCAC ¶ 38.) For example, plaintiffs allege that Silicon Image reported in a Form 10-Q, filed with the Securities and Exchange Commission ("SEC") on May 10, 2004, that it had "deficiencies" in its "internal control structure design related to the overall internal control environment regarding [the CEO's] communication and operating style and his periodic involvement in revenue recognition discussions," (see TCAC ¶ 42),[2] and that Silicon Image was then "in the process of implementing a series of internal measures designed to enhance the Company's overall internal control environment," such as "improving communication within the management team and between the management team and the Board of Directors, including the Audit Committee," (see id.).

Plaintiffs also allege that thereafter, between June 25, 2004 and October 13, 2005 ("the Class Period"), defendants violated federal securities laws by making "fraudulent and material statements, misrepresentations and omissions," (see TCAC ¶¶ 1, 13), specifically, by making false statements "to the effect that Silicon Image was dedicated to good corporate governance, to establishing appropriate systems of corporate reporting, and to the designation and segregation of management responsibilities," (see TCAC ¶ 44), while "concealing from investors the depth and scope of problems at the Company, including: the multiple and repeated weaknesses in Silicon Image's internal control and reporting

---

[1]According to plaintiffs, Tirado previously held a variety of other positions with Silicon Image. (See id.)

[2]At the time Silicon Image made such statement, Lee held the position of CEO. (See TCAC ¶ 22.)

1   structure; the serious communications problems between and within both management and

2   the Board of Directors; the inability of the Board to oversee and act independently of

3   management; the repeated overriding of internal controls by Lee and Tirado; and the

4   deficiencies in its financial reporting process, including the issuance of false and misleading

5   financial statements in violation of GAAP [Generally Accepted Accounting Principles]," (see

6   id.).

7       Plaintiffs, who allege they purchased Silicon Image common stock at "artificially

8   inflated prices" during the Class Period, (see TCAC ¶¶ 18, 19), assert they incurred losses

9   "caused by the disclosures of the true facts and the resulting drop in the price of Silicon

10  Image common stock at various times throughout the Class Period," (see TCAC ¶ 13).

11                              **DISCUSSION**

12      Defendants argue that plaintiffs' claims are subject to dismissal on the ground

13  plaintiffs have failed to comply with the pleading requirements set forth in the Private

14  Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4.

15  **A. PSLRA**

16      The PSLRA requires a plaintiff to "specify each statement alleged to have been

17  misleading [and] the reason or reasons why the statement is misleading."  See 15 U.S.C.

18  § 78u-4(b)(1).  The PSLRA further requires, to the extent an allegation is based on

19  information and belief, that the plaintiff allege "with particularity all facts on which that belief

20  is formed," see id., meaning "a plaintiff must provide a list of all relevant circumstances in

21  great detail," see In re Silicon Graphics, Inc. Sec. Litig., 183 F. 3d 970, 984 (9th Cir. 1999);

22  see also In re Silicon Graphics, Inc. Sec. Litig., 970 F. Supp. 746, 763-64 (N.D. Cal. 1997)

23  (holding plaintiff must allege "confidential informants, employees, competitors, government

24  employees, members of the media, and others who have provided information leading to

25  the filing of the case"), aff'd, 183 F. 3d 970.  Lastly, with respect to the element of scienter,

26  a plaintiff "must plead, in great detail, facts that constitute strong circumstantial evidence of

27  deliberately reckless or conscious misconduct."  See DSAM Global Value Fund v. Altris

28  Software, Inc., 288 F. 3d 385, 388-89 (9th Cir. 2002) (internal quotation and citation

1  omitted).

2      As set forth below, the Court has examined in turn each allegedly misleading

3  statement identified in the TCAC, to determine if plaintiffs have pleaded their claims in

4  conformity with the PSLRA.[3]  As further set forth below, the Court finds plaintiffs have

5  failed, with respect to each such statement, to sufficiently allege why the statement was

6  false or misleading when made and/or to sufficiently identify a source for the allegation of

7  falsity.[4]

8      **1.  June 24, 2004 Press Release**

9      In a press release dated June 24, 2004 and, according to plaintiffs, released "after

10  the markets closed," Silicon Image announced Lee would relinquish his role as CEO, while

11  remaining Chairman of the Board.  (See TCAC ¶ 45.)  The release quoted Lee as stating,

12  "[T]he board and I are committed to exemplifying excellence in corporate governance, and

13  therefore believe it is important to separate the roles of the CEO and chairman."  (See id.)

14  Plaintiffs allege such statement was false and misleading when made because defendants

15  "had no intention of undertaking real measures to exemplify 'excellence in corporate

16  governance' or of 'separating the roles of CEO and chairman."  (See TCAC ¶ 48.)

17      In support of their allegation that defendants, on June 24, 2004, were not actually

18  "committed to exemplifying excellence in corporate governance" and/or that defendants did

19  not actually "believe it is important to separate the roles of the CEO and chairman,"

20

21      [3]The TCAC alleges that statements pertaining to an SEC investigation included in a
   Form 8-K filed January 31, 2005 were "false and misleading."  (See TCAC ¶¶ 81-82.)
22  Plaintiffs state in their opposition that such statements are "not the basis of [p]laintiffs' 10(b)
   claim," (see Pls.' Opp., filed November 1, 2006, at 15:9-11.)  Accordingly, the Court has not
23  considered defendants' argument that plaintiffs fail to sufficiently allege a securities fraud
   claim based on such statements.
24      The TCAC also alleges that statements pertaining to bonus plans included in a Form
   8-K dated May 4, 2005 were "false and misleading."   (See TCAC ¶¶ 110-113.)  Plaintiffs
25  state in their opposition that such statements "do not independently constitute
   § 10(b) claims," but are pleaded to "bolster" plaintiffs' scienter allegations.  (See Pls.' Opp.
26  at 14:4-11.)  Accordingly, the Court has not considered defendants' argument that plaintiffs
   fail to sufficiently allege a securities fraud claim based on such statements.
27

28      [4]Based on such finding, the Court does not address herein defendants' argument
   that plaintiffs have failed to sufficiently allege scienter.

4

1  plaintiffs rely on three confidential sources, each of whom is alleged to have left Silicon

2  Image in July 2004.  "CS1," whom plaintiffs describe as having performed "a variety of

3  senior roles including Director of Marketing and Director of North America Western Sales,"

4  allegedly told plaintiffs that Silicon Image was "deeply divided," with Lee, Tirado, and

5  "others in upper management" on one side and "outside directors" on the other side.  (See

6  TCAC ¶ 48.)  "CS2," whom plaintiffs describe as a "Human Resource Generalist," allegedly

7  described Silicon Image as a "'dictatorship' that was 'run by Lee'," and that "what he

8  wanted, he got."  (See id.)  Finally, "CS3," whom plaintiffs describe as a "senior level

9  employee" who "reported directly" to the Vice President of Operations, allegedly "explained

10 that the Company's sales and accounting practices were guarded by and restricted to the

11 control of a small circle of people, including Lee and Tirado," and that "even directors . . .

12 were not privy to that information."  (See id.)

13      As defendants point out, plaintiffs provide little to no details as to the work performed

14 by CS1, CS2 and CS3, and, consequently, plaintiffs have not sufficiently alleged that any

15 such source would possess the information identified in the TCAC.  See In re Daou

16 Systems, Inc. Securities Litigation, 411 F. 3d 1006, 1015 (9th Cir. 2005) (holding

17 confidential sources must "be described with sufficient particularity to support the

18 probability that a person in the position occupied by the source would possess the

19 information alleged"; finding confidential witnesses described with requisite particularity

20 where plaintiff "described [source's] job description and responsibilities," thus enabling

21 district court to determine whether source would be "familiar" with information provided by

22 source).  Moreover, with respect to CS1 and CS2, plaintiffs essentially allege CS1's opinion

23 that Silicon Image was "divided" and CS2's opinion that Silicon Image was a "dictatorship,"

24 but fail to allege facts suggesting the basis for said sources' respective opinions; with

25 respect to CS3, plaintiffs fail to identify any particular "sales" or "accounting" practices that

26 CS3 believed was restricted to only a "small circle of people."

27      Plaintiffs also allege the existence of sources other than the above-referenced

28 confidential sources.  (See TCAC ¶ 49.)  Plaintiffs, however, fail to identify any such

1  sources, except to refer, in summary fashion, to fourteen other paragraphs in the TCAC,

2  (see id.), thereby requiring the Court and defendants to speculate as to what information

3  contained in the cited fourteen paragraphs is offered to establish the statements

4  concerning "excellence in corporate governance" and the importance of "separat[ing] the

5  roles of the CEO and chairman" were false or misleading when made.  Further, given that

6  most, if not all, of the cited fourteen paragraphs contain allegations of events that occurred

7  well after June 2004, (see, e.g., TCAC ¶ 70) (alleging third-party analyst Jason Paraschas

8  stated in April 2005 that two directors had resigned from Silicon Image's board in

9  November 2004 because of "conflicts with defendant Lee")), the relevance of such cited

10  paragraphs in establishing the allegedly true set of facts that existed on June 24, 2004 is

11  not apparent.  Under such circumstances, plaintiffs' cursory reference to numerous

12  paragraphs does not satisfy the PSLRA's requirement that plaintiffs allege "with

13  particularity all facts" on which they base their allegation of falsity.  See 15 U.S.C. § 78u-

14  4(b)(1).

15  　　　　Accordingly, plaintiffs have failed to sufficiently allege a claim based on the June 24,

16  2004 press release.

17  **　　　2.  Form 10-Q Filed August 9, 2004**

18  　　　　In its Form 10-Q filed August 9, 2004, Silicon Image stated it was "in the process of

19  implementing a series of internal measures designed to enhance the Company's overall

20  internal control environment," which "measures include[d] (i) restructuring some reporting

21  relationships among management and clarifying management roles and responsibilities,

22  (ii) improving communication within the management team and between the management

23  team and the Board of Directors, including the Audit Committee, (iii) formalizing license

24  review processes by requiring additional documentation of items necessary for licensing

25  revenue recognition decisions and increasing the standardization of licensing deliverables

26  and post-contract customer support for revenue recognition purposes, (iv) adding additional

27  resources and personnel to key control functions and (v) implementing training and

28  compliance programs."  (See TCAC ¶ 51.)

1   Although plaintiffs identify the above-quoted statement as being "false and

2   misleading," (see TCAC ¶¶ 51, 58), plaintiffs do not set forth a specific theory as to falsity;

3   rather, plaintiffs refer in conclusory manner to three prior paragraphs in the TCAC, (see

4   TCAC ¶ 58), again requiring the Court and defendants to speculate as to plaintiffs' theory.

5   For this reason alone, plaintiffs fail to state a claim based on statements in the Form 10-Q

6   filed August 9, 2004.[5]

7   Further, assuming, arguendo, plaintiffs' theory is that Silicon Image was not, as of

8   August 9, 2004, actually "in the process of implementing" the measures identified in the

9   Form 10-Q filed August 9, 2004, or, if Silicon Image was so engaged, that defendants

10   somehow knew the process ultimately would not result in such implementation, plaintiffs fail

11   to identify a source who would have knowledge of such fact.  Although plaintiffs again refer

12   to CS1, CS2, and CS3, (see TCAC ¶¶ 48, 58), each such individual, as noted above, is

13   alleged to have left Silicon Image in July 2004; plaintiffs fail to allege how any such

14   individual would have had knowledge of defendants' activities in August 2004.[6]

15   Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-

16   Q filed August 9, 2004.

17   **3.  October 19, 2004 Conference Call**

18   Plaintiffs allege Lee conducted a "conference call with analysts" on October 19,

19   2004, at which time Lee stated:

20   Before we get into the line of business and financials, let me quickly give an
    update of the management transitions.  We have successfully narrowed our

21

22   [5]Of the three cited paragraphs, the only fact that appears to pertain to whether, as of

23   August 9, 2004, Silicon Image was "in the process of implementing" the measures set forth
    in the Form 10-Q is plaintiffs' allegation that Silicon Image "failed to implement changes to

24   [its] overall internal control environment."  (See TCAC ¶ 49.)  Assuming, arguendo, Silicon
    Image ultimately was unsuccessful at implementing the measures it had previously been "in
    the process of implementing," such outcome is, by itself, insufficient to support a finding

25   that the statement was false when made.

26   [6]Again, in addition to referencing the confidential sources, plaintiffs incorporate

27   numerous paragraphs that purportedly contain sources.  (See TCAC ¶¶ 49, 58.)  Given that
    most, if not all, of the incorporated paragraphs pertain to events that occurred well after

28   August 2004, such incorporation is insufficient to provide notice of asserted sources, other
    than the above-referenced confidential sources.

CEO search down to a few candidates and hope to reach closure well before the end of the year.  As Chairman of the company, I will continue to help in leading the company's strategic direction, and ensuring that the new CEO inherits a strong and solid foundation for business growth.

We have also begun the CFO [Chief Financial Officer] search in order to facilitate synergies between these two critical management positions.  The succeeding CEO will participate in this search.  Bob will remain as our CFO to oversee the orderly completion of our year-end books and Sarbanes Oxley 404 board certifications and to ensure a smooth management transition.[7]

(See TCAC ¶ 55.)

Although plaintiffs allege the above-quoted statements made by Lee on October 19, 2004 were "false and misleading," (see TCAC ¶¶ 55, 58), plaintiffs fail to allege a specific theory as to why such statements, or portions thereof, were false or misleading when made.  Rather, plaintiffs refer in conclusory manner to three earlier paragraphs in the TCAC, (see TCAC ¶ 58), again requiring guesswork.  Further, plaintiffs fail to allege any facts to set forth the basis for plaintiffs' belief that Lee made the above-quoted statements to the analysts.  See In re Harmonic, Inc. Sec. Litig., 163 F. Supp. 2d 1079, 1097 (N.D. Cal. 2001) (holding where plaintiffs alleged defendants made statements to analysts, but "allege[d] no facts explaining why they believe[d] that the statements they attribute[d] to defendants were actually made by defendants," plaintiffs failed to comply with PSLRA).  Finally, for the reasons stated above with respect to the Form 10-Q filed August 9, 2004, plaintiffs fail to sufficiently identify any source with knowledge of facts that would show the statements allegedly made by Lee on October 19, 2004 were false or misleading when made.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the October 19, 2004 conference call.

//

//

//

---

[7]"Bob" is an apparent reference to Robert G. Gargus.  (See TCAC ¶ 54.)

1    **4.  Form 10Q Filed November 5, 2004**

2        In its Form 10Q filed November 5, 2004, Silicon Image stated it had "implemented a

3    series of internal measures designed to enhance the Company's overall internal control

4    environment," (see TCAC ¶ 56), specifically, four of the five measures that Silicon Image

5    had reported in its prior Form 10Q that it was "in the process" of implementing,[8] (see TCAC

6    ¶¶ 51, 56).  Additionally, Silicon Image reported that "the Company has announced plans to

7    recruit a new [CEO] and separate the roles of Chairman and [CEO], and has made

8    significant progress toward this goal during the third quarter of fiscal 2004."  (See TCAC

9    ¶ 56.)

10        Although plaintiffs allege the above-quoted statements in the Form 10-Q were "false

11   and misleading," (see TCAC ¶¶ 56, 58), again, plaintiffs fail to allege a specific theory as to

12   why such statements, or portions thereof, were false or misleading when made; instead,

13   plaintiffs refer in conclusory manner to three prior paragraphs in the TCAC, (see TCAC

14   ¶ 58), requiring speculation by defendants and the Court.  Further, for the reasons stated

15   above with respect to the Form 10-Q filed August 9, 2004, plaintiffs fail to sufficiently

16   identify any source with knowledge of facts that would show the statements allegedly made

17   by Silicon Image on November 5, 2004 were false or misleading when made.

18        Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-

19   Q filed November 5, 2004.

20    **5.  November 11, 2004 Press Release**

21        On November 11, 2004, Silicon Image issued a press release announcing it had

22   appointed Steven Laub ("Laub") as its CEO and President, stating:

23        Laub will be responsible for driving the company's business strategy,
         execution and overall company performance.  Commenting on Laub's
24        appointment, David Lee, Silicon Image founder and chairman of the board,

25   _____

26        [8]Of the five measures Silicon Image previously reported it was "in the process of
     implementing," the only one not described as having been "implemented" in the Form 10-Q
27   filed November 5, 2004 is "formalizing license review processes by requiring additional
     documentation of items necessary for licensing revenue recognition decisions and
28   increasing the standardization of licensing deliverables and post-contract customer support
     for revenue recognition purposes."  (Compare TCAC ¶ 51 with TCAC ¶ 56.)

noted, "We are excited to have someone of Steve's caliber and executive management experience joining the company.  Steve has a successful track record in growing company profitability in roles where he had senior management responsibility for a broad range of products, services and partnerships in the semiconductor arena.  I'm delighted to have Steve on board and am eager to work together with him to lead Silicon Image's digital content delivery strategy."

(See TCAC ¶ 59.)  Plaintiffs allege that Laub subsequently resigned on or about January 25, 2005.  (See TCAC ¶ 64.)

Plaintiffs allege the November 11, 2004 press release was "false and misleading because defendants failed to disclose that defendant Lee planned to and succeeded in substantially limiting Laub's role and responsibility as [CEO], and had never, in fact, separated the roles of Chairman and CEO."  (See TCAC ¶ 61.)  Plaintiffs also allege that "from the outset [of Laub's employment], Lee did not relinquish Chief Executive responsibilities, continued to obstruct the implementation of effective controls over financial reporting, and never permitted Laub to assume the executive role and responsibility of even a normal Chief Executive," for example, by "block[ing] Laub's access to [Silicon Image's] financial information."  (See id.)  In short, plaintiffs, it would appear, are alleging that defendants, at the time the November 11, 2004 press release was issued, did not intend that Laub "be responsible for driving the company's business strategy, execution and overall company performance."

As sources, plaintiffs identify CS2, CS3, and four market analysts.  The TCAC fails, however, to include facts to support a finding that any such source was in a position to know of defendants' intentions on November 11, 2004.  As noted, CS2 and CS3 are alleged to have left Silicon Image in July 2004, and plaintiffs fail to allege, much less with the requisite particularity, any facts to support a finding that CS2 and/or CS3 nonetheless would be in a position to know of defendants' plans on November 11, 2004.  With respect to the analysts, although each such analyst essentially reported, after Laub's January 25, 2005 resignation, that Laub resigned as a result of his differences with Lee,[9] no such

_____

[9] The analysts' reports as to Laub's departure presumably were based on Laub's letter of resignation, published on or about January 26, 2005.  (See infra.)

analyst purported to state or infer that defendants did not, on November 11, 2004, hold the views set forth in the November 11, 2004 press release.  (See TCAC ¶ 68.)

Additionally, plaintiffs identify Laub as a source.  Plaintiffs rely on Laub's resignation letter, which Silicon Image publicly disclosed on or about January 26, 2006, and which stated "there [were] fundamental issues of relative role and responsibility that unexpectedly arose as early as [his] first week of employment."  (See TCAC ¶ 65.)  Plaintiffs further rely on the following statement Laub allegedly made to plaintiffs: "'[A]s soon as I joined the company, there was an attempt by the Chairman of the Board [Lee] to change my responsibilities and the definition of my role as CEO of the company.'"  (See TCAC ¶ 67.) According to plaintiffs, "Laub stated that the change was to a more junior level position." (See id.)  Plaintiffs argue that because Lee attempted to change Laub's job responsibilities shortly after defendants issued the November 11, 2004 press release, the temporal proximity is sufficient to give rise to an inference that the press release was false when made.  As the Ninth Circuit has held, however, "temporal proximity of an allegedly fraudulent statement or omission and a later disclosure" may "bolster a complaint" but is insufficient to allege falsity in the absence of "other adequately pleaded allegations for the temporal proximity to bolster."  See Yourish v. California Amplifier, 191 F. 3d 983, 997 (9th Cir. 1999) (holding temporal proximity between July 1996 statement and August 1996 disclosure of fact inconsistent with July statement insufficient, by itself, to support inference of falsity of July statement).  Here, plaintiffs lack "other adequately pleaded allegations for the temporal proximity to bolster," see id., and, consequently, plaintiffs' reliance on Laub's subsequent disclosures is insufficient to support a finding that the November 11, 2004 press release was false or misleading when made.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the November 11, 2004 press release.

**6. January 25, 2005 Press Release**

On January 25, 2005, Silicon Image issued a press release announcing Laub had resigned as CEO, Tirado had been appointed CEO, Christopher Paisley ("Paisley") had

been appointed as Chairman of the Board to replace Lee, and Lee would remain as a

board member and would become Chairman of the Board of PanelLink Cinema, LLC.[10]

(See TCAC ¶ 63.)  With respect to Laub's resignation, the press release stated, "Laub

recently joined the Company, but in tendering his resignation, cited issues related to the

scope of his roles and responsibilities."  (See TCAC ¶ 64.)

Plaintiffs allege the press release was misleading because it "failed to provide any

meaningful details concerning [Laub's] departure."  (See TCAC ¶ 75.)  Plaintiffs allege that

defendants should have disclosed the "real reason," which, plaintiffs assert, "stemmed from

Lee's override of the Board's decision to separate the roles of Chairman and CEO and his

efforts to redefine Laub's responsibilities and refusal to relinquish executive control."  (See

id.)  A statement is not "misleading" for purposes of federal securities law merely because it

is "incomplete"; rather, a statement is misleading if it "affirmatively create[s] an impression

of a state of affairs that differs in a material way from the one that actually exists."  See

Brody v. Transitional Hospitals Corp., 280 F. 3d 997, 1006 (9th Cir. 2002).  Here, it is clear

from the press release that an internal dispute as to the scope of the CEO's job

responsibilities was the reason for Laub's resignation.[11]  Although the omission of details as

to the internal dispute may have rendered the explanation "incomplete," plaintiffs fail to

allege how such omission created a materially different impression from the one that

actually existed.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the January

25, 2005 press release.

//

//

---

[10]According to plaintiffs, PanelLink Cinema, LLC, is a wholly-owned subsidiary of Silicon Image.  (See TCAC ¶ 22.)

[11]Indeed, the day after issuing the subject press release, Silicon Image publicly disclosed Laub's resignation letter, which, as noted, contained Laub's statement that "there [were] fundamental issues of relative role and responsibility that unexpectedly arose as early as [Laub's] first week of employment," (see TCAC ¶ 65), again making it clear that Laub resigned as a result of an internal dispute over Laub's job responsibilities.

1

**7. January 25, 2005 Conference Call**

Plaintiffs allege that during a conference call conducted after the market closed on January 25, 2005, Tirado, in response to an analyst's request for "further information regarding Laub's resignation," stated, "All of the information that we're willing to share was circumscribed by the press release, and that's really all I'm willing to share at this point." (See TCAC ¶ 74.)  Plaintiffs allege that Tirado's response was misleading because he did not provide "any meaningful details concerning [Laub's] departure."  (See TCAC ¶ 75.)

Plaintiffs fail to allege any facts to set forth the basis for plaintiffs' belief that Tirado made the above-quoted statement during the conference call.  Further, for the reasons stated above with respect to the January 25, 2005 press release, plaintiffs fail to sufficiently allege the statement, if made, was misleading.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the January 25, 2005 conference call.

**8.  Form 10-K Filed March 16, 2005**

In its Form 10-K filed March 16, 2005, Silicon Image stated that its "disclosure controls and procedures as of [December 31, 2004] were effective in ensuring that all material information required to be disclosed in the reports [Silicon Image] file[s] and submit[s] under the Securities and Exchange Act of 1934 has been made known to [the CEO, the CFO, and the Chief Accounting Officer ("CAO")] on a timely basis and that such information has been properly recorded, processed, summarized and reported, as required," and that Silicon Image's "management" had "conducted an assessment of the Company's internal control over financial reporting as of December 31, 2004," and "concluded that, as of December 31, 2004, the Company's internal control over financial reporting was effective."  (See TCAC ¶ 86.)

Plaintiffs allege the above-quoted statements were "false and misleading" because defendants did not disclose that "Lee had not relinquished control over the Company and attempted to limit the roles and responsibilities of the Company's duly hired CEO," i.e., Laub.  (See TCAC ¶ 90.)  As noted, Laub is the source of plaintiffs' allegation that Lee

13

1   attempted to change Laub's responsibilities after Laub was hired as CEO, (see TCAC

2   ¶ 67); it is reasonable to conclude that Laub would have been in a position to know who

3   was attempting to limit the scope of his responsibilities.  Plaintiffs fail, however, to allege

4   how Lee's asserted attempt to limit the scope of Laub's position tends to show the

5   statements in the Form 10-K were false or misleading when made.

6        The statements, to the extent they arguably can be interpreted as including Laub,

7   are that Laub, the CEO in December 2004, was provided with "material information

8   required to be disclosed" to the SEC and that Laub, as part of "management," concluded

9   Silicon Image's internal control over financial reporting was effective.  Plaintiffs, however,

10  do not allege, for example, that Laub, as a result of Lee's asserted attempt to limit the

11  scope of Laub's position, was not provided with the above-referenced information or that

12  Laub did not form the above-referenced conclusion.[12]

13       Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-

14  K filed March 16, 2005.

15       **9.  Form 10-K/A Filed April 1, 2005**

16       On April 1, 2005, Silicon Image filed a Form 10-K/A, in which Tirado stated the Form

17  10-K filed on March 16, 2005 did not contain "any untrue statement of a material fact or

18  omit to state a material fact necessary to make the statements made . . . not misleading."

19  (See TCAC ¶¶ 87, 88.)  For the reasons stated above with respect to the 10-K filed March

20  16, 2005, plaintiffs have failed to sufficiently allege any statement in the Form 10-K/A was

21  false or misleading when made.

22       Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-

23  K/A filed April 1, 2005.

24  _____

25       [12]In their opposition, plaintiffs rely on the allegation that "CS3" told plaintiffs that
     Silicon Image's "sales and accounting practices were guarded by and restricted to the
26   control of a small circle of people, including Lee and Tirado."  (See TCAC ¶ 48; see also
     TCAC ¶ 69.)  Assuming the TCAC can be read as relying on such statement as a reason
27   why the March 16, 2005 statements were false or misleading, such reliance is unavailing.
     As noted, CS3 allegedly left Silicon Image in July 2004 and plaintiffs fail to allege how CS3
28   would have any knowledge as to which of Silicon Image's employees and/or directors had
     "control of" sales and accounting practices thereafter.

1

### 10. April 21, 2005 Press Release

In a press release issued April 21, 2005, Silicon Image stated that its "first quarter pro forma net income was $7.7 million or $0.09 per diluted share," and, according to plaintiffs, referred to an "income statement [that] showed a provision for income taxes of $331,000 on income of $16,964,000."  (See TCAC ¶ 102.)  Plaintiffs allege such statements were "false and misleading" because "Silicon Image materially overstated its net income and understated its provision for taxes" and because defendants used an "unreasonably low tax rate" that "added income to the Company's bottom line."  (See TCAC ¶ 105.)  Plaintiffs further allege said asserted "failure to properly report [Silicon Image's] financial results violated, among other provisions of GAAP, SFAS 109 and SFAS 123." (See id.)

The TCAC states:  "Plaintiffs' allegations of defendants' improper reporting of financial results is based on consultations with accounting experts."  (See id.)  Such allegation as to the source of plaintiffs' belief implies that experts performed some type of analysis and formed a conclusion therefrom.  Plaintiffs fail, however, to include any description of the experts' qualifications, how any analysis was performed, what data the experts considered, and/or any other information that could support a finding that any expert's conclusion is reliable.  See Silicon Graphics, 183 F. 3d at 985 (rejecting, as inadequately pleaded "boilerplate," plaintiffs' allegation that complaint was supported by review of "SEC filings, securities analysts reports and advisories about the Company, press releases issued by the Company, media reports about the Company and discussions with consultants"); cf. Nursing Home Pension Fund, Local 144 v. Oracle Corp., 380 F. 3d 1226, 1233 (9th Cir. 2004) (holding plaintiffs sufficiently stated factual basis for allegation defendant "artificially inflate[d] the amount of revenue reported," where expert was source of such allegation and where complaint disclosed expert's background, calculations, and opinions, and also set forth content of documents expert reviewed as well as content of "corroborating" statement made by former employee of defendant).

Plaintiffs additionally allege that Silicon Image "ultimately admitted its lack of internal

15

1   controls in its Form 10-Q for the quarter ended September 30, 2005 and in its Form 10-K

2   for year ended December 31, 2005." (See TCAC ¶ 105.)  Plaintiffs do not, however,

3   identify any particular "admission" on which plaintiffs are relying for their allegations

4   concerning improper reporting of tax liability on April 21, 2005, much less allege that any

5   "lack of internal controls" resulted in defendants' using an "unreasonably low tax rate" when

6   they provided the figures set forth in the April 21, 2005 press release.

7       In their opposition, plaintiffs argue that, in addition to ¶ 105, numerous paragraphs in

8   the TCAC include allegations to support a finding that "defendants' tax reserves were

9   deliberately set too low to inflate income." (See Pls.' Opp. at 12:3-8 (citing TCAC ¶¶ 80,

10  103, 116, 123-124, 126, 133-137).)  None of the cited paragraphs, however, appears to

11  contain any source, even one referenced in a conclusory manner, to support a finding that

12  "defendants' tax reserves were deliberately set too low."

13      Finally, plaintiffs argue that those same paragraphs include allegations to support a

14  finding that "as a result of continuing internal control deficiencies in the options and tax

15  accounting areas, [Silicon Image] could not accurately report financial results." (See id. at

16  12:8-10.)  Of those numerous paragraphs, only two appear to bear any relationship to such

17  theory.  First, in ¶ 116, plaintiffs allege that Silicon Image stated, in a Form 10-Q dated May

18  10, 2005, that its Audit Committee did not have the requisite number of members as of

19  April 24, 2005 and, as a consequence, could not "provide effective oversight over the

20  processes related to the Company's external financial reporting and internal control over

21  financial reporting as of and for the quarter ended March 31, 2005." (See TCAC ¶ 116.)

22  Such statement, however, does not support a finding that the figures disclosed in the April

23  21, 2005 press release were, in fact, inaccurate; at best, it supports a finding that the Audit

24  Committee had not confirmed them.

25      Second, in ¶ 137, plaintiffs allege that Silicon Image stated, in a Form 10-Q filed on

26  a date subsequent to March 31, 2006,[13] that the "controls [it] designed to correctly compute

27

28          [13]Plaintiffs do not specify the date .

16

1   the excess tax benefit related to stock options exercised did not operate effectively," and,

2   upon learning of such "material weakness in [its] internal control over financial reporting,"

3   Silicon Image "record[ed] a material adjustment in the 2005 financial statements that

4   affected the provision for income taxes and stockholder's equity."  (See TCAC ¶ 137.)

5   Such statement would support a finding that, at some point during 2005, Silicon Image had

6   not properly recorded its "excess tax benefit related to stock options exercised."  Plaintiffs

7   fail to allege, however, that any such improper recording occurred with respect to the first

8   quarter of 2005, which, as noted, is the subject of the April 21, 2005 press release.  (See

9   TCAC ¶ 102.)

10      Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 21,

11   2005 press release.

12      **11.  April 21, 2005 Conference Call**

13      Plaintiffs allege Tirado conducted a conference call on April 21, 2005 and stated:

14   We have booked approximately .3 million in income tax liability for the first
    quarter.  For the second quarter, our estimate is approximately .5 million for
15   taxes.  We ended last year with more NOLs than anticipated, and we were
    able to use additional credits from the exercise of stock options and the
16   scrapping of fully-reserved inventory.  As a result, we are now able to project
    that this year's tax rate will be in the three to six percent range, and our best
17   guess for 2006 would be in the high teens as a percent of revenue.

18   (See TCAC ¶ 104.)

19      Plaintiffs allege such statements were "false and misleading" because Silicon Image

20   "failed to recognize a tax provision based on the appropriate effective tax rate anticipated

21   for the year as required by GAAP."  (See id.)  Plaintiffs fail to allege any facts to set forth

22   the basis for plaintiffs' belief that Tirado made the above-quoted statement.  Further, for the

23   reasons stated above with respect to the April 21, 2005 press release, plaintiffs have failed

24   to sufficiently allege a source for their assertion that the projections made by Tirado in the

25   April 21, 2005 conference call were, at that time, false or misleading.

26      Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 21,

27   2005 conference call.

28   //

1

2    **12.  April 25, 2005 Press Release**

3        In a press release issued April 25, 2005, Silicon Image announced that four of its

4    "outside directors" had resigned.  (See TCAC ¶ 92.)  In that regard, the press release

5    stated that David Courtney ("Courtney") and Paisley "resigned due to a disagreement over

6    whether or not David Lee should be re-nominated to the Company's Board of Directors,"

7    that Keith McAuliffe ("McAuliffe") "resigned due to events surrounding the question of

8    whether David Lee should be re-nominated to the Company's Board of Directors," and that

9    Richard Sanquini ("Sanquini") "resigned without stating a reason."  (See id.)

10        Plaintiffs allege the press release was "false and misleading" because "it failed to

11   fully inform investors of the real reasons for the director resignations and the continuing

12   internal control problems facing the Company."  (See id.)  Plaintiffs allege the "real reasons"

13   for the resignations were that "Lee, joined by his protege defendant Tirado, resisted the

14   recommendations and authority of the other Board members" and that the Board was

15   "unable to act independently of management."  (See TCAC ¶ 93.)  Plaintiffs allege that their

16   source for such asserted real reasons is a statement Silicon Image made in a Proxy

17   Statement dated May 16, 2005.  In that document, Silicon Image, according to plaintiffs,

18   reported that Courtney and Paisley had stated "they would not continue as directors if Dr.

19   Lee was re-nominated to the Board . . . because, in part, (i) Steve Tirado . . . had advised

20   the Board on April 23, 2005 that if the Board chose not to re-nominate Dr. Lee to the Board,

21   Mr. Tirado would be resigning from his position as Chief Executive Officer and (ii) they

22   believed that if the Board chose not to re-nominate Dr. Lee to the Board, Dr. Lee also

23   would terminate his employment with Silicon Image."  (See id.)[14]

---

24        [14]The TCAC quotes statements made by market analysts who offered opinions as to
     the reasons for the resignations.  (See, e.g., TCAC ¶ 96 (alleging statement by analyst

25   Michael Bertz that "[w]e believe [the resignations are] likely due to some continued fallout
     from the previous management shakeup last January when Lee was removed from the

26   Chairman's position following short tenured former CEO Steve Laub's departure").
     Although the TCAC does not state such allegations are offered to show the April 25, 2005

27   press release was false and/or misleading, plaintiffs' opposition suggests the allegations
     are included for such purpose.  (See Pls.' Opp at 10:9-17.)  To the extent plaintiffs are

28   relying on analysts' statements for the purpose of showing falsity, such reliance is
     unavailing because the analysts do not identify any source for their respective opinions.

The above-quoted Proxy Statement does not purport to address the reasons former directors McAuliffe and Sanquini resigned, and, consequently, to the extent plaintiffs allege the April 25, 2005 press release was false and/or misleading as to said two former directors, plaintiffs have failed to sufficiently allege a claim.

With respect to former directors Courtney and Paisley, although the Proxy Statement provides a more detailed reason for their respective resignations than that provided in the April 25, 2005 press release, an "incomplete" disclosure is, as noted, only "misleading" if it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists."  See Brody, 280 F. 3d at 1006.  Here, plaintiffs fail to allege how the April 25, 2005 press release created an impression materially different from that set forth in the May 16, 2005 Proxy Statement.  The former expressly reported that Courtney and Paisley did not wish to re-nominate Lee to the Board and then resigned, thus suggesting an internal dispute.  The latter simply provided more details as to that dispute.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 25, 2005 press release.

**13. Form 10-Q Dated May 10, 2005**

In a Form 10-Q dated May 10, 2005, Silicon Image reported, "For the quarter ended March 31, 2005, we have recorded a provision for income taxes of $331,000." (See TCAC ¶ 102.)  As noted, Silicon Image made the same statement in an April 21, 2005 press release.  (See id.)  Plaintiffs allege the May 10, 2005 statement was "false and misleading" for the same reasons that statements in the April 21, 2005 press release were "false and misleading."  (See TCAC ¶ 105.)[15]  For the reasons stated above with respect to the April 21, 2005 press release, plaintiffs have failed to sufficiently allege the above-quoted May 10, 2005 statement was false or misleading when made.

Additionally, in that same Form 10-Q, Silicon Image reported its CEO, CFO, and

---

[15]The TCAC's reference, in ¶ 105, to "April 25, 2005" appears to be a typographical error.

1   CAO had "concluded that [Silicon Image's] disclosure controls and procedures were

2   ineffective because of [a] material weakness in [its] internal control over financial reporting,"

3   specifically, that, on April 24, 2005, "four of the five independent members of the

4   Company's Board of Directors resigned, leaving the Audit Committee with only one

5   member," which "resulted in the inability of the Audit Committee to provide effective

6   oversight over the processes related to the Company's external financial reporting and

7   internal control over financial reporting as of and for the quarter ended March 31, 2005."

8   (See TCAC ¶ 116.)  Plaintiffs allege such statement was "false and misleading" for the

9   same reasons that statements in the April 21, 2005 press release were "false and

10  misleading," (see TCAC ¶¶ 105 , 117); the Court thus infers plaintiffs' theory to be that the

11  above-quoted statement was misleading because it did not disclose that the "material

12  weakness" referenced therein had caused Silicon Image to misrepresent its tax rate and

13  income for the first quarter of 2005, (see TCAC ¶ 105).  For the reasons stated above with

14  respect to the April 21, 2005 press release, plaintiffs have failed to sufficiently allege the

15  above-quoted May 10, 2005 statement was false or misleading when made.

16       Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-

17  Q dated May 10, 2005.

18       **14.  June 10, 2005 Press Release**

19       In a press release issued June 10, 2005, Silicon Image stated, "As of March 31,

20  2005, management of the Company concluded that a material weakness in internal

21  controls over financial reporting existed due to the fact that the oversight of the Company's

22  control over financial reporting by the Company's Audit Committee was ineffective due to

23  the resignations on April 24, 2005 of four of the five independent members of the

24  Company's Board of Directors, which at that time left the Audit Committee of the Board of

25  Directors with only one member."  (See TCAC ¶ 117.)

26       Again, plaintiffs allege such statement was "false and misleading" for the same

27  reasons that statements in the April 21, 2005 press release were "false and misleading,"

28  (see TCAC ¶¶ 105, 117); the Court thus infers plaintiffs' theory to be that the above-quoted

1   statement was misleading because it did not state the "material weakness" referenced

2   therein had caused Silicon Image to misrepresent its tax rate and income for the first

3   quarter of 2005, (see TCAC ¶ 105).  For the reasons stated above with respect to the April

4   21, 2005 press release, plaintiffs have failed to sufficiently allege the above-quoted June

5   10, 2005 statement was false or misleading when made.

6        Accordingly, plaintiffs have failed to sufficiently allege a claim based on the June 10,

7   2005 press release.

8        **15.  August 9, 2005 Press Release**

9        In a press release issued August 9, 2005, Silicon Image stated, "Second Quarter

10  non-GAAP* net income was $10.7 million or $0.12 per diluted share."  (See TCAC ¶ 123

11  (asterisk in original).)  Plaintiffs allege such statements was "false and misleading" because

12  "Silicon Image materially overstated its net income and understated its provision for taxes"

13  and because defendants used an "unreasonably low tax rate" that "added income to the

14  Company's bottom line," (see TCAC ¶ 126), and that said asserted "failure to properly

15  report [Silicon Image's] financial results violated, among other provisions of GAAP, SFAS

16  109 and SFAS 123," (see id.)

17       For the reasons stated above with respect to statements made in the April 21, 2005

18  press release, plaintiffs' reliance on "accounting experts" and on Silicon Image's having

19  later "admitted its lack of internal controls," (see id.), is insufficient to identify a source for

20  the asserted failure to properly report financial results in the August 9, 2005 press release.

21  Similarly, the Court finds unpersuasive, for the reasons stated above with respect to the

22  April 21, 2005 press release, plaintiffs' argument in their opposition that the TCAC includes

23  sufficient allegations to support a finding that "defendants' tax reserves were deliberately

24  set too low to inflate income," (see Pls.' Opp. at 12:3-8), and a finding that "as a result of

25  continuing internal control deficiencies in the options and tax accounting areas, [Silicon

26  Image] could not accurately report financial results," (see id. at 12:8-10).

27       Accordingly, plaintiffs have failed to sufficiently allege a claim based on the August

28  9, 2005 press release.

1

### 16.  August 9, 2005 Conference Call

Plaintiffs allege the above-referenced "results," as set forth in the August 9, 2005 press release, were "discussed in a conference call with Company officials the same day." (See TCAC ¶ 124.)  Although plaintiffs allege "the conference call" was "false and misleading," (see TCAC ¶ 126), plaintiffs fail to identify any statement made in the conference call, let alone any source for plaintiffs' belief that any such statement in fact was made and, further, was false or misleading.  Finally, plaintiffs fail to identify, as required by Rule 9(b), the "Company officials" alleged to have made the statement(s) on which plaintiffs rely.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the August 9, 2005 conference call.

### 17.  Form 10-Q Filed August 9, 2005

In its Form 10-Q dated August 9, 2005, Silicon Image stated:

For the three and six month periods ended June 30, 2005, [Silicon Image] recorded provisions for taxes of $247,000 and $578,000, respectively compared to $225,000 and $572,000, respectively, for the three and six month period[s] ended June 30, 2004.  The provision amounts relate primarily to an estimated provision for U.S. alternative minimum taxes for the fiscal year ending December 31, 2005 and a provision relating to taxes in foreign jurisdictions where [Silicon Image] operate[s] based on expected annual estimate tax rates.  The provision for the three and six months ended June 30, 2004, included approximately $45,000 and $262,000 relating to withholding taxes payable in connection with certain licensing cont[r]acts.

(See TCAC ¶ 125.)

Plaintiffs allege the above-quoted statement was, for the same reasons as alleged with respect to the August 9, 2005 press release, "false and misleading."  (See TCAC ¶ 126.)  For the reasons stated above with respect to the August 9, 2005 press release, plaintiffs have failed to sufficiently allege the above-quoted statement was false or misleading when made.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-Q dated August 9, 2005.

//

22

**B. Leave to Amend**

Plaintiffs request leave to amend if the motion to dismiss is granted.

As defendants observe, plaintiffs have amended their complaint four times.  The instant pleading, however, is only the second pleading reviewed by the Court.  Because, at this stage of the proceedings, the Court cannot say "it appears beyond doubt" that plaintiffs "can prove no set of facts in support of [their] claim" that would entitle them to relief, see Conley v. Gibson, 355 U.S. 41, 45-46 (1957), the Court will afford plaintiffs the opportunity to cure the deficiencies noted above.[16]

## CONCLUSION

For the reasons discussed above, defendants' motion to dismiss the TCAC is hereby GRANTED, and the TCAC is hereby DISMISSED with leave to amend.  Any Fourth Consolidated Amended Complaint shall be filed no later than March 30, 2007.

**IT IS SO ORDERED.**

Dated: February 23, 2007

_____
MAXINE M. CHESNEY
United States District Judge

---

[16]In granting leave to amend, the Court is not granting plaintiffs leave to add new statements, with the exception of identifying the allegedly actionable statement(s) made during the August 9, 2005 conference call, nor may plaintiffs name new defendants or expand the Class Period.  Leave to make any such amendments must be sought by noticed motion pursuant to Rule 15(a).