IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re SILICON IMAGE, INC. SECURITIES LITIGATION | No. C-05-456 MMC<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; DISMISSING FOURTH CONSOLIDATED AMENDED COMPLAINT; VACATING HEARING** |

    Before the Court is the motion, filed May 25, 2007 by defendants Silicon Image, Inc. ("Silicon Image"), Steve Tirado ("Tirado"), and David Lee ("Lee"), to dismiss plaintiffs' Fourth Consolidated Amended Complaint ("4CAC"), pursuant to Rules 12(b)(6) and 9(b) of the Federal Rules of Civil Procedure.  Plaintiffs William S. Hayman, John Herlihy, and James Donald Smallwood have filed opposition, to which defendants have replied.  Having considered the parties' submissions filed in support of and in opposition to the motion, the Court finds the matter appropriate for determination on said submissions, VACATES the hearing scheduled for September 7, 2007, and rules as follows.

    In its "Order Granting Defendants' Motion to Dismiss; Dismissing Third Consolidated Amended Complaint with Leave to Amend," filed February 23, 2007 ("February 23, 2007 Order"), the Court found plaintiffs had failed to allege sufficient facts to support a claim that any of the seventeen assertedly false and/or misleading statements on which the instant action is based were false or misleading when made, and afforded plaintiffs leave to amend

to cure the deficiencies identified in said order. By the instant motion, defendants argue plaintiffs have failed to cure the deficiencies identified in the February 23, 2007 Order, and that further leave to amend is inappropriate.

**A. Compliance With PSLRA**

As set forth below, the Court has examined each allegedly false or misleading statement, in the order each such statement was addressed in the February 23, 2007 Order, to determine if plaintiffs have pleaded their claims in conformity with the Private Securities Litigation Reform Act ("PSLRA"). As discussed below, the Court finds plaintiffs have, with respect to each statement, failed to properly plead a claim.

**1. June 24, 2004 Press Release**

In the February 23, 2007 Order, the Court found plaintiffs failed to comply with the PSRLA's requirement that plaintiffs allege with particularity all facts on which they based their allegation that the following statement contained in a June 24, 2004 press release was false: "[T]he board and [Lee] are committed to exemplifying excellence in corporate governance, and therefore believe it is important to separate the roles of the CEO and chairman." (See February 23, 2007 Order at 4:8-6:16.) In particular, the Court found plaintiffs' reliance on three confidential sources was insufficient: "[W]ith respect to CS1 and CS2, plaintiffs essentially allege CS1's opinion that Silicon Image was 'divided' and CS2's opinion that Silicon Image was a 'dictatorship,' but fail to allege facts suggesting the basis for said sources' respective opinions; with respect to CS3, plaintiffs fail to identify any particular 'sales' or 'accounting' practices that CS3 believed was restricted to only a 'small circle of people'." (See id. at 5:22-26.)

The Court finds plaintiffs, in the 4CAC, have failed to cure the deficiencies identified in the February 23, 2007 order.

First, plaintiffs again fail to provide a factual basis for the conclusory opinions assertedly provided to plaintiffs by CS1 and CS2, and again fail to identify, with any particularity, the practices CS3 believed were restricted to only a small number of people or to explain why such assertion by CS3, if true, would establish the falsity of any statement in

2

the June 24, 2004 press release.  (See 4CAC ¶ 53(b)(iv).)

Second, plaintiff's newly-stated reliance on other information from CS2, specifically, CS2's belief that Lee "pushed out" Silicon Image's former Chief Financial Officer Robert Gargus ("Gargus"), (see 4CAC ¶ 53(b)(iii)), is unavailing.  Plaintiffs fail to allege any facts to support a finding that CS2, referred to only as a "Human Resources Generalist," would know the reason why Gargus left Silicon Image, particularly given that Gargus allegedly announced his resignation on August 18, 2004, (see id.), and continued to work at Silicon Image until April 20, 2005, (see 4CAC ¶ 85), whereas CS2 left Silicon Images in July 2004, (see 4CAC ¶ 53(b)(iv)(3)).  Further, even if Lee "pushed out" Gargus, plaintiffs fail to explain how such occurrence establishes the falsity of any statement made weeks before Gargus announced his resignation and months before Gargus, in fact, resigned.

Third, plaintiff's newly-stated reliance on information provided by CS4, specifically, CS4's opinion that "Gargus did not see eye-to-eye with defendants Tirado and Lee on many important issues," (see 4CAC ¶¶ 53(b)(iii)), likewise is unavailing.[1]  Plaintiffs fail to allege facts to support a finding that CS4, who left Silicon Image in November 2002, (see id.), would know the circumstances pertaining to Gargus's departure years later.  Further, even assuming Gargus "did not see eye-to-eye" with Tirado and Lee, plaintiffs fails to explain how such situation renders any statement made in the June 24, 2004 press release false or misleading.

Finally, plaintiffs' newly-stated reliance on information provided to them by Steven Laub ("Laub"), who began working for Silicon Image as CEO and President on November 11, 2004, (see 4CAC ¶¶ 53(b)(i), 53(b)(ii), 59(b)(i)), is insufficient to cure the previously-noted deficiencies.  Although Laub assertedly provided plaintiffs with information concerning matters occurring at Silicon Image while Laub was employed there, none of the information provided by Laub pertains to what the Board of Directors of Silicon Image and/or Lee "believed" on June 24, 2004, a date months before Laub was employed by

---

[1] Plaintiffs allege CS4 is a "former Executive Vice President."  (See id.)

3

Silicon Image.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the June 24, 2004 press release.  See 15 U.S.C. § 78u-4(b)(1) (providing plaintiff must allege "with particularity all facts" on which an allegation of falsity is made).

**2. Form 10-Q Filed August 9, 2004**

In the February 23, 2007 Order, the Court found plaintiff failed to state a claim based on any statement contained in Silicon Image's Form 10-Q filed August 9, 2004, because plaintiffs failed to specify a theory as to why any statement therein was false or misleading and, alternatively, assuming the claim was based on the theory that defendants were not actually implementing the "internal measures" identified in said Form 10-Q, because plaintiffs failed to identify a source that would have had knowledge of Silicon Image's internal affairs on August 9, 2004.  (See February 23, 2007 Order at 6:17-7:16.)

In the 4CAC, plaintiffs confirm they are basing their claim on the theory that defendants were not actually implementing the "internal measures" identified in said 10-Q; specifically, plaintiffs allege that, contrary to statements in the Form 10-Q, Silicon Image was not "in the process" of "restructuring some reporting relationships among management and clarifying management roles and responsibilities" or "improving communication within the management team and between the management team and the Board of Directors." (See 4CAC ¶ 55.)  Plaintiffs, however, fail to identify a source who purports to have knowledge as to whether Silicon Image was implementing the subject "internal measures" on August 9, 2004.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-Q filed August 9, 2004.

**3. October 19, 2004 Conference Call**

In the February 23, 2007 Order, the Court found plaintiff failed to state a claim based on any statement made by Lee during an October 19, 2004 conference call, because plaintiffs failed to allege any basis for plaintiff's assertion that Lee made any statements during said call, failed to specify a theory as to why any statement that may have been

4

made was false or misleading, and failed to identify a source with knowledge of facts to support a finding that any such statement was false or misleading. (See February 23, 2007 Order at 7:17-8:23.)

The 4CAC, although continuing to quote statements allegedly made by Lee during the October 19, 2004 conference call, (see 4CAC ¶ 57), no longer alleges any statement made during said conference was false.

Accordingly, the Court deems plaintiffs to have withdrawn any substantive claim based on statements made during the October 19, 2004 conference call. Alternatively, the Court finds plaintiffs, because they have not cured the deficiencies identified in the February 23, 2007 Order, have failed to sufficiently allege a claim based on the October 19, 2004 conference call.

**4. Form 10Q Filed November 5, 2004**

In the February 23, 2007 Order, the Court found plaintiff failed to state a claim based on statements made in Silicon Image's Form 10Q filed November 5, 2004, because plaintiffs failed to allege a theory as to why any such statements were false or misleading, and failed to identify a source with knowledge of facts that would show said statements were false or misleading.

In the 4CAC, plaintiffs have set forth a theory of falsity. Specifically, plaintiffs allege (1) the statement that Silicon Image had "restructur[ed] some reporting relationships among management and clarif[ied] management roles and responsibilities" was false because no such restructuring or clarification had occurred by November 5, 2004, and (2) the statement that Silicon Image had "improv[ed] communication within the management team and between the management team and the Board of directors, including the Audit Committee" was false when made because Silicon Image had not improved such communication by November 5, 2004. (See 4CAC ¶¶ 58, 59(a).)

In the earlier-filed August 9, 2004 Form 10Q, Silicon Image stated it was "in the process of implementing" measures it later identified, in its November 5, 2004 Form 10Q, as having been "implemented." (Compare 4CAC ¶ 54 with 4CAC ¶ 58.) Plaintiffs fail to

5

allege any source with knowledge that Silicon Image had not engaged in the cited restructuring of reporting relationships, clarification of roles, and/or improvement of communication. Although plaintiffs now rely on Laub, Laub, as noted, began working for Silicon Image on November 11, 2004, and there is no showing he would have had a basis to compare the circumstances pertaining in November 2004 with the situation pertaining prior to that time. Moreover, the statement by Laub on which plaintiffs rely cannot be reasonably interpreted as an assertion that the restructuring, clarification, or improvements had not occurred; rather, Laub stated that after he joined Silicon Image, Lee had attempted to "change" Laub's responsibilities and that issues as to Laub's responsibilities "unexpectedly arose" immediately after Laub began working for Silicon Image. (See 4CAC ¶¶ 59(b)(i), 59(iii).)

Plaintiffs' newly-stated reliance on a November 17, 2004 statement by Silicon Image announcing that two Board members had resigned likewise is insufficient. Plaintiffs assert that a third-party financial analyst reported on April 26, 2005 that the two Board members had resigned because of "conflicts with defendant Lee." (See 4CAC ¶ 59(b)(ii).) The November 5, 2004 Form 10Q, however, does not purport to claim that no conflicts existed among the Board. The allegation that two Board members had "conflicts" with Lee is, if ture, insufficient to establish that Silicon Image had not, as of November 5, 2004, implemented the cited restructuring, clarification, and communication improvements.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-Q filed November 5, 2004.

**5. November 11, 2004 Press Release**

In its February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on a November 11, 2004 press release announcing Silicon Image's appointment of Laub as its CEO and President, and in which Silicon Images stated Laub would "be responsible for driving the company's business strategy, execution and overall company performance." Specifically, the Court found plaintiff failed to allege any facts to support a finding that the sources on which plaintiffs relied were "in a position to know of defendants'

intentions on November 11, 2004." (See February 23, 2007 Order at 9:20-11:25.)

Plaintiffs offer no new facts with respect to their reliance on the sources identified in the TCAC. The 4CAC does, however, identify new sources, specifically, "CS3's continuing contacts with [Silicon Image], after CS3 left Silicon Image." (See 4CAC ¶ 64(e).) According to plaintiffs, as a result of CS3's "continuing contacts," CS3 learned that "Board members wanted to hire Laub" in order to "keep an eye on [Silicon Image's] financial practices." (See id.) Plaintiffs fail to explain why such information tends to prove it was not defendants' intention, on November 11, 2004, that Laub "be responsible for driving the company's business strategy, execution and overall company performance." Additionally, plaintiffs' reliance on CS3's "continuing contacts," an apparent reference to persons with whom CS3 kept in touch, is plainly insufficient. See In re Daou Systems, Inc. Securities Litigation, 411 F. 3d 1006, 1015 (9th Cir. 2005) (holding confidential sources must "be described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged"; finding confidential witnesses described with requisite particularity where plaintiff "described [source's] job description and responsibilities," thus enabling district court to determine whether source would be "familiar" with information provided by source).

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the November 11, 2004 press release.

**6. January 25, 2005 Press Release**

In its February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on a January 25, 2005 press release announcing that Laub had resigned, citing "issues related to the scope of his roles and responsibilities." With respect to plaintiffs' theory that said statement was misleading because defendants did not further disclose that Laub's decision "stemmed from Lee's override of the Board's decision to separate the roles of Chairman and CEO and [Lee's] efforts to redefine Laub's responsibilities and refusal to relinquish executive control," the Court found the omission of details as to the internal dispute did not create a "materially different impression" from the one that plaintiffs allege

actually existed.  (See February 23, 2007 Order at 11:26-12:21.)

In the 4CAC, plaintiffs add no new allegations that could support a finding that the statement made, specifically, that Laub resigned because of "issues related to the scope of his roles and responsibilities," (see 4CAC ¶ 64(b)), created a "materially different impression" with respect to the alleged fact that Lee was the person who attempted to limit the scope of Laub's roles and responsibilities.  See Brody v. Transitional Hospitals Corp., 280 F. 3d 997, 1006 (9th Cir. 2002) (holding statement not "misleading" for purposes of federal securities law merely because it is "incomplete" but, rather, because it "affirmatively create[s] an impression of a state of affairs that differs in a material way from the one that actually exists").

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the January 25, 2005 press release.

**7. January 25, 2005 Conference Call**

In the February 23, 2007 Order, the Court found plaintiffs failed to state a claim based on Tirado's alleged statement, made during a January 25, 2005 conference call, directing an analyst who had a question about Laub's resignation to the January 25, 2005 press release, because plaintiffs failed to identify any source to support a finding that Tirado made any such statement, and failed to allege facts to support a finding any such statement was misleading.

Plaintiffs have not added any additional allegations regarding the January 25, 2005 conference call.  Further, because plaintiffs have failed to sufficiently allege the January 25, 2005 press release was false and misleading, plaintiffs' claim based on Tirado's allegedly referring an analyst to such press release fails for this additional reason.  Consequently, plaintiffs have failed to cure the deficiencies identified in the February 23, 2007 Order.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the January 25, 2005 conference call.

//

**8. Form 10-K Filed March 16, 2005**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on a statement in Silicon Image's Form 10-K filed March 16, 2005, that Silicon Image had conducted an "assessment" and had "concluded" its "internal control over financial reporting was effective," because plaintiffs failed to identify a source who provided plaintiffs with information different from that disclosed in the Form 10-K. (See February 23, 2007 Order at 13:14-14:14.)

In the 4CAC, plaintiffs again fail to identify any source to support a finding that Silicon Image did not conduct an assessment concerning its internal control over financial reporting and/or that Silicon Image did not conclude that its internal control over financial reporting was effective.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-K filed March 16, 2005.

**9. Form 10-K/A Filed April 1, 2005**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on a statement made in Silicon Image's Form 10-K/A filed April 1, 2005, that its March 16, 2005 Form 10-K did not contain any false or misleading statement, because plaintiffs had failed to state a claim based on any statement in the March 16, 2005 Form 10-K. (See February 23, 2007 Order at 14:15-23.)

As stated above, plaintiffs have not cured the deficiencies previously identified with respect to their claim based on the March 16, 2005 Form10-K.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-K/A filed April 1, 2005, which is derivative of their claim based on the March 16, 2005 Form 10-K

**10. April 21, 2005 Press Release**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on statements pertaining to Silicon Image's income and taxes for the first quarter of 2005, made in a April 21, 2005 press release, because plaintiffs failed to sufficiently identify

9

any source for their allegation that the figures identified therein were false or misleading. (See February 23, 2007 Order at 15:1-17:11.)

In the 4CAC, as in the TCAC, plaintiffs allege that defendants "materially overstated [Silicon Image's] net income and understated its provision for taxes." (See 4CAC ¶ 93.) Plaintiffs, however, provide no new information as to the sources on which they previously relied, and have failed to allege any new sources for said allegation.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 21, 2005 press release.

**11. April 21, 2005 Conference Call**

In its February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on statements pertaining to Silicon Image's projected tax liability for the first and second quarters of 2005 and for the entirety of 2005 and 2006, made during an April 21, 2005 conference call, because plaintiffs failed to sufficiently identify any source for plaintiffs' belief that the projections were false or misleading. (See February 23, 2007 Order at 17:12-27.)

In the 4CAC, plaintiffs identify the following new source: "Plaintiffs' allegations are supported by the contemporaneous statements by some financial analysts, who expressed surprise at the lower tax rate used by [Silicon Image]. For example, following announcements of the first quarter results, analysts, such as CIBC World Markets noted in a report, dated April 22, 2005, that second quarter projections used a 'lower-than-expected tax rate (now 3%-6% versus 10% expectation)." (See 4CAC ¶ 93(b).) It is unclear how CIBC World Markets' "surprise" that Silicon Image's projections were below CIBC World Markets' "expectation" could suffice to support a finding that Silicon Image's projections were false or misleading. In any event, plaintiffs' reliance on CIBC World Markets' opinion is unavailing, because there is no allegation CIBC World Markets was in a position to know any facts, from an inside source or otherwise, that would support a finding Tirado's alleged projections were false or misleading.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 21,

1  2005 conference call.

**12. April 25, 2005 Press Release**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on an April 25, 2005 press release in which Silicon Image announced that four of its five "outside directors" had resigned, and in which Silicon Image further stated the reasons for each such resignation. In particular, the Court found the sources identified by plaintiffs, specifically, statements made by Silicon Image in May 2005 and by third-party analysts, were insufficient, because plaintiffs failed to identify facts provided by any such source that would support a finding that the reasons provided in the press release were misleading. (See February 23, 2007 Order at 18:1-19:16.)

The 4CAC includes one new allegation concerning a source for plaintiffs' belief that the April 25, 2005 press release was misleading. Plaintiffs now allege that comments made on April 26, 2005 by third-party analyst Michael Bertz ("Bertz") were "based on 'conversations with [Silicon Image] (including former CFO Bob Gargus).'" (See 4CAC ¶ 78(b) (quoting Bertz report).) In his report, Bertz stated: "We believe the primary causes [of the resignations] are due to issues surrounding the re-nomination of founder and fomer CEO and Chairman David Lee to the Board. We believe that this is likely due to some continued fallout from the previous management shakeup last January when Lee was removed from the Chairman's position following short tenured former CEO Steve Laub's departure." (See id.)

As discussed in the Court's February 23, 2007 Order, plaintiffs allege that the subject press release identified the reason why two of the directors resigned as being "due to a disagreement over whether or not David Lee should be re-nominated to the Company's Board of Directors," and identified the reason why a third director resigned as being "due to events surrounding the question of whether David Lee should be re-nominated to the Company's Board of Directors." (See 4CAC ¶ 77(a)(ii).)[2] In short, there

---

[2] Silicon Image reported in the press release that the fourth director had resigned "without stating a reason." (See id.)

11

1 is no apparent conflict between the stated reasons for the resignations in Bertz's April 26,
2 2007 report and those stated in the press release issued one day earlier.  At best, the Bretz
3 report can be read as providing a few immaterial details.  Under such circumstances,
4 plaintiffs' additional reference to Bertz's having Gargus as a source is insufficient to cure
5 the deficiencies identified in the February 23, 2007 Order.  See Brody, 280 F. 3d at 1006.

6 Accordingly, plaintiffs have failed to sufficiently allege a claim based on the April 25,
7 2005 press release.

**13.  Form 10-Q Filed May 10, 2005**

9 In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim
10 based on statements made in Silicon Image's Form 10-Q filed May 10, 2005, because
11 plaintiffs' theory of falsity was identical to that asserted, and found to be insufficient, with
12 respect to the April 21, 2005 press release.  (See February 23, 2007 Order at 19:17 -
13 20:17.)

14 The 4CAC again alleges the May 10, 2005 Form 10-Q was false and misleading for
15 the reasons alleged with respect to the April 21, 2005 press release.  (See 4CAC ¶ 93.)  As
16 discussed above, plaintiffs have failed to cure the deficiencies in their claim based on the
17 April 21, 2005 press release.  Consequently, plaintiffs' claim based on the May 10, 2005
18 Form 10-Q fails to the extent it is based on the same theory offered with respect to the April
19 21, 2005 press release.

20 The 4CAC discloses two new theories of falsity as to one statement in the May 10,
21 2005 Form 10-Q.  In said Form, Silicon Image disclosed it had "concluded that [Silicon
22 Image's] disclosure controls and procedures were ineffective because of [a] material
23 weakness in [its] internal control over financial reporting," specifically, that, on April 24,
24 2005, "four of the five independent members of the Company's Board of Directors
25 resigned, leaving the Audit Committee with only one member," which "resulted in the
26 inability of the Audit Committee to provide effective oversight over the processes related to
27 the Company's external financial reporting and internal control over financial reporting as of
28 and for the quarter ended March 31, 2005."  (See 4CAC ¶ 102.)

12

Plaintiffs' first new theory is that the above-quoted statement was misleading because it does not include the reasons for the resignations. (See 4CAC ¶ 105.) As discussed above, however, and assuming, arguendo, a failure to include the reasons for the resignations could otherwise constitute a material omission, defendants publicly disclosed those reasons on April 25, 2005. Consequently, the "market" could not have been "misled." See Heliotrope General, Inc. v. Ford Motor Co., 189 F. 3d 971, 975-76 (9th Cir. 1999) ("If the market has become aware of the allegedly concealed information, the facts allegedly omitted by the defendant would already be reflected in the stock's prices and the market will not be misled.") (internal quotation and citation omitted). Moreover, as also discussed above, plaintiffs have failed to sufficiently allege the disclosed reasons for the resignations were false or misleading.

Plaintiffs' second new theory is that the statement was false and misleading because defendants later "admitted" that Silicon Image's "internal financial controls over income tax and stock options were materially deficient." (See 4CAC ¶ 105.) Plaintiffs thus appear to allege defendants were, on May 10, 2005, aware of and failed to disclose additional material problems. Plaintiffs, however, fail to identify any "admission" made by Silicon Image that it knew, on May 10, 2005, of any material deficiency in Silicon Image's "internal financial controls over income tax and stock options."

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-Q dated May 10, 2005.

**14. June 10, 2005 Press Release**

In its February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on a June 10, 2005 press release that disclosed the "material weakness in internal controls" that had been disclosed in Silicon Image's May 10, 2005 Form 10-Q, because plaintiffs' theory of falsity was identical to that asserted, and found to be insufficient, with respect to the April 21, 2005 press release. (See February 23, 2007 Order at 20:18-21:7.)

In the 4CAC, plaintiffs now allege that the disclosure in the June 10, 2005 press release was "false and misleading" for the same reasons as set forth with respect to the

May 10, 2005 Form 10-Q.  As discussed above, however, plaintiffs have failed to state a claim based on the May 10, 2005 Form 10-Q.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the June 10, 2005 press release.

**15.  August 9, 2005 Press Release**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on an August 9, 2005 press release in which Silicon Image set forth its net income and tax projections for the second quarter of 2005, because plaintiffs had failed to sufficiently identify a source in support of their allegation that the figures identified therein were false or misleading.  (See February 23, 2007 Order at 21:8-28.)

In the 4CAC, plaintiffs identify a new source, specifically, Silicon Image.  Plaintiffs allege that Silicon Image "ultimately admitted its lack of internal controls" in a Form 10-Q filed November 9, 2005, in which Silicon Image stated as follows:

> As of September 30, 2005, the Company did not maintain effective controls over the valuation and determination of its deferred tax assets and income tax provisions.  Specifically, the Company did not maintain effective controls to ensure that the valuation of deferred tax assets, including any associated valuation allowance, was determined based upon appropriate supporting documentation.

(See 4CAC ¶¶ 112(c), 121.)  The above-quoted statement, however, cannot reasonably be interpreted as an admission that the net income and/or projected tax figures disclosed in the August 9, 2005 press release, which figures pertained to the quarter ending June 30, 2007, were false or misleading.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the August 9, 2005 press release.

**16.  August 9, 2005 Conference Call**

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on statements made during an August 9, 2005 conference call, because plaintiffs failed to identify any statements made during said conference call or who made them, and failed to state why any statements that may have been made were false and misleading.

14

(See February 23, 2007 Order at 22:1-11.)

In the 4CAC, plaintiffs fail to provide any new information concerning said alleged conference call, and, consequently, have not cured the deficiencies identified in the February 23, 2007 Order.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the August 9, 2005 conference call.

### 17. Form 10-Q Filed August 9, 2005

In the February 23, 2007 Order, the Court found plaintiffs had failed to state a claim based on statements made in Silicon Image's Form 10-Q filed August 9, 2005, because plaintiff's theory of falsity as to the challenged statements therein was identical to that asserted, and found to be insufficient, with respect to the August 9, 2005 press release. (See February 23, 2007 Order at 22:12-27.)

In support of its allegation that statements in the August 9, 2005 Form 10-Q were false and misleading, plaintiffs again rely exclusively on the same theory offered with respect to the August 9, 2005 press release. (See 4CAC ¶ 112.) Because, as discussed above, plaintiffs have not cured the deficiencies with respect to their claim based on the August 9, 2005 press release, plaintiffs likewise have failed to cure the deficiencies with respect to their claim based on the August 9, 2005 Form 10-Q.

Accordingly, plaintiffs have failed to sufficiently allege a claim based on the Form 10-Q dated August 9, 2005.

### B. Leave to Amend

The Court previously dismissed the Second Consolidated Amended Complaint with leave to amend, providing a detailed description of the pleading deficiencies therein, and, as stated above, previously dismissed the TCAC with leave to amend, again providing a detailed description of the deficiencies therein. There is no indication that plaintiffs would, if granted further leave to amend, be able to amend to cure the deficiencies in the 4CAC.

Accordingly, the 4CAC will be dismissed without further leave to amend.

//

15

**CONCLUSION**

For the reasons discussed above, defendants' motion to dismiss the 4CAC is hereby GRANTED, and the 4CAC is hereby DISMISSED.

**IT IS SO ORDERED.**

Dated: September 21, 2007

MAXINE M. CHESNEY
United States District Judge